UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE BENTON, SEAN MARRE, RYAN PIEL, AND ADAM ENGLISH, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, <br><br> Plaintiffs, <br><br> v. <br><br> LABELS DIRECT, INC., CHRISTOPHER BUDDE AND KIMBERLY CHANEY, <br><br> Defendants. | Case No. 4:14-cv-01293 |

**DEFENDANT LABELS DIRECT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(d)**

## I.     INTRODUCTION

Plaintiffs filed their Motion for Partial Summary Judgment ("Plaintiffs' Motion") against Defendant Labels Direct, Inc. ("Defendant" or "Labels Direct")[1] before an answer to their Third Amended Complaint had been filed, any scheduling order put in place, and any depositions or adequate discovery conducted.  Moreover, **after** filing their Motion, Plaintiffs filed their Fourth Amended Complaint, which added two more defendants to this case.  Plaintiffs' Motion is obviously premature, and it should be denied on that basis and on the merits.  If the Court decides not to deny Plaintiffs' Motion at this time, it should instead continue its consideration of Plaintiffs' Motion until the completion of discovery. Alternatively, if this Court finds Plaintiffs' Motion ripe for determination, Labels Direct requests the Court permit it to file a more comprehensive opposition. While Defendant has filed a response to Plaintiffs' Statement of Uncontroverted Facts based on information available to it, Labels Direct cannot fully respond to

---

[1] Though Plaintiffs recently amended their Complaint to add two individual defendants, they only moved for summary judgment against Labels Direct.

Plaintiffs' Motion without evidence gleaned from Plaintiffs establishing, among other things, their activities during their breaks and whether these activities were performed predominantly for the benefit of Labels Direct.  Contrary to the legal standard offered by Plaintiffs in their Motion, the burden is on Plaintiffs to demonstrate their breaks predominately benefited Labels Direct and their time or attention was devoted to work-related activities during their breaks. *Marti v. Grey Eagle Distributors, Inc.*, 937 F. Supp. 845, 852 (E.D. Mo. 1996).  The time spent on breaks is alone not sufficient to determine whether the breaks should have been compensated. *Id.*

Plaintiffs filed their premature Motion to rush the Court to a conclusion in this case, hoping this Court would: (1) accept the United States Department of Labor's ("DOL") "guidance" as binding on this Court; and (2) ignore the facts Plaintiffs' actual work hours and break times varied day to day[2], Plaintiffs were completely relieved from duty, the breaks primarily benefited Plaintiffs, Plaintiffs had sufficient time to eat during their breaks, and Plaintiffs performed no work during their breaks. But this case demands consideration and resolution based only upon on a complete record.

Labels Direct therefore requests the Court deny Plaintiffs' Motion for Partial Summary Judgment as premature or, alternatively, continue consideration and determination of the Motion until such time discovery is concluded.  If the Court decides to consider the merits of Plaintiffs' Motion at this time, Labels Direct has provided sufficient evidence to prove the existence of genuine issues of material fact that necessarily preclude the entry of summary judgment.

---

[2] Plaintiffs' Motion relies solely on the hours Plaintiffs were scheduled to work and be on break.  It omits key facts necessary for consideration by this Court prior to making a determination on both liability and damages.

## II.     ARGUMENT

**A. Legal standard.**

The court may grant a motion for summary judgment only when the moving party has shown there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986). The "nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999). Granting summary judgment is only appropriate where the "complete failure of proof" for an essential element of the nonmoving party's case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

As summary judgment must be based upon facts in evidence, however, granting a motion for judgment is only appropriate after "adequate time for discovery." *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996) (quoting *Celotex,* 477 U.S. at 322). In fact, under Rule 56, "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir. 1995) (quoting *Anderson,* 477 U.S. at 250 n.5).

Federal Rule of Civil Procedure 56(d) permits the (1) denial of a summary judgment motion; or (2) continuance of a summary judgment motion to permit the opposing party to take discovery before adequately responding to the motion, when the nonmoving party cannot present facts essential to its preparation of an opposition. Fed. R. Civ. P. 56(d). The purpose of the rule is "to provide an additional safeguard against an improvident or premature grant of summary judgment." *United States ex rel. Bernard v. Casino Magic Corp.,* 292 F.3d 419, 426 (8th Cir. 2002) ("the rule should be applied with a spirit of liberality").

The rule facilitates the principle that "summary judgment is proper only after the nonmovant has had adequate time for discovery." *Ray v. American Airlines, Inc.,* 609 F.3d 917, 923 (8th Cir. 1997); *Robinson v. Terex. Corp.,* 439 F.3d 465, 467 (8th Cir. 2006).  Indeed, this Court routinely grants Rule 56(d) motions and denies summary judgment where the parties have yet to engage in any substantive discovery or file responsive pleadings. *See, e.g., MEMC Elec. Materials, Inc. v. Sunlight Group, Inc.,* 2008 WL 4642866, at *5-6 (E.D. Mo. Oct. 17, 2008, Buckles, J.) (granting defendant's motion for discovery and denying summary judgment when plaintiff moved for partial summary judgment prior to the initiation of the discovery process and defendant "had no opportunity to develop facts and evidence through discovery"); *Fischer v. Steward,* 2008 WL 1766875, at *2 (E.D. Mo. Apr. 14, 2008, Webber, J.) (denying summary judgment when defendant moved for summary judgment just over a month after the complaint was filed).  To succeed with a Rule 56(d) motion, the nonmoving party must only present some material facts which further discovery might unveil. *Casino Magic,* 293 F.3d at 426.  Labels Direct clearly satisfies the low bar set for defeating Plaintiffs' Motion as premature and on the merits or, alternatively, obtaining a continuance while discovery proceeds.

**B.  Summary of Facts**.

Labels Direct is a label manufacturing company, with a production facility in Chesterfield, Missouri.  Plaintiffs are all former warehouse and manufacturing employees of Labels Direct.  (Chaney Decl. ¶ 2).  Labels Direct currently employs about 13 individuals at its Chesterfield facility.  Of these 13 employees, only 8 work as warehouse and manufacturing employees.  (Chaney Decl. ¶ 3).  To properly compensate its employees for all hours worked, Labels Direct requires its hourly employees to "clock in" and "clock out" using an Ingersoll Rand time clock, which uses biometric hand geometry recognition, to record their hours worked.

*See* Defendant's Response to Plaintiffs' Statement of Uncontroverted Material Facts filed herewith[3], ¶ 10. The time clock is in the middle of the production facility where employees gather at the start and end of their shifts. (Chaney Decl. ¶ 10). Employees must record all time worked using the time clock system and may not perform any work "off the clock." *See* Defendant's Additional Uncontroverted Material Facts[4], ¶ 2. Labels Direct compensates its hourly employees, at a minimum, for all hours worked based on their time clock entries. *See* D's Add. SF, ¶ 3. For any time worked beyond 40 hours per week, Labels Direct pays the employees overtime at one and one-half times their regular hourly rate. *Id*. It is the employee's responsibility to accurately record all working time and, to the extent there are any errors, bring any time clock problems or compensation errors to management's attention. *Id.*

Prior to 2010, warehouse and manufacturing employees were entitled to one 1-hour meal/break period per day. D's Add. SF, ¶ 4. In 2009, Plaintiff Marré[5] and other warehouse and manufacturing employees expressed a preference for and requested Labels Direct provide three breaks, instead of one. *Id*. The employees requested the change to Labels Direct's meal period policy so they could eat multiple times throughout the day. *Id*. Labels Direct agreed to the policy change in January 2010. D's Resp. SF, ¶ 8; D's Add. SF, ¶ 4. Therefore, from January 2010 until February 2014, Labels Direct provided Plaintiffs and the other hourly warehouse and manufacturing employees a 15 minute break in the morning, a 30 minute break in the middle of their shift, and a 15 minute break in the afternoon so they could eat multiple times during a shift. D's Add. SF, ¶ 5. Labels Direct even supplied free food to Plaintiffs and the other warehouse

---

[3] Defendant's Response to Plaintiffs' Statement of Uncontroverted Material Facts is referred to as "D's Resp. SF, ¶ ___."

[4] Defendant's Additional Uncontroverted Material Facts is referred to as "D's Add. SF, ¶ ___."

[5] Even Plaintiffs in their Fourth Amended Complaint admit they requested Labels Direct change its meal period policy to provide for three breaks per shift. *See* Doc. #: 33, ¶ 16.

and manufacturing employees during all three daily breaks. *Id.* As before with the one break period, the employees had to clock out at the start of each break and clock in when they returned from break. D's Resp. SF, ¶ 11.

When the three break period policy was in place, the warehouse and manufacturing employees could take their breaks whenever and wherever they desired. D's Add. SF, ¶ 6. The employees were completely relieved from duty during all three breaks. D's Add. SF, ¶ 7. Furthermore, their time and attention during the breaks was devoted to non-work-related activities for their personal benefit. D's Add. SF, ¶ 6. None of the activities engaged in by the employees during their breaks benefitted Labels Direct. *Id.* They were not required or allowed to perform any duties, were not "on-call", and were free to do whatever they wanted with their break periods – eat, sleep, surf the internet, watch television, read, make personal phone calls, etc. D's Add. SF, ¶ 7. They could leave – and often did leave – Labels Direct's premises during their breaks. *Id.* Fifteen minutes was ample time for an employee to eat a meal. *Id.* Indeed, most (if not all) of the employees used the break periods to eat a substantial meal. *Id.*

The employees' breaks were also rarely, if ever, interrupted. D's Add. SF, ¶ 8. However, if an employee's break was interrupted or otherwise cut short, he/she clocked back in prior to performing any work to ensure he/she was properly compensated for any time worked. *Id.* No employee ever complained to management about the three breaks being off-the-clock. D's Add. SF, ¶ 9. But since Labels Direct changed its meal policy in February 2014 to provide only one meal period per day, several employees have expressed their dissatisfaction with the change and their preference for the three meal breaks. *Id.*

C. **Plaintiffs' Motion for Summary Judgment Is Premature As Discovery Has Not Been Completed On Issues Essential To Plaintiffs' Claim.**

6

Plaintiffs believe there are no genuine issues of material fact simply because two of their daily meal periods were scheduled to be less than 30 minutes.  But, while the duration of the break period is **a factor** to be considered, it is **not solely** determinative of the question. *Blain v. General Electric Company,* 371 F.Supp. 857, 861 (W.D. Ky. 1971).  Further, the regulation Plaintiffs cite as "controlling law" (*See* Doc. #: 22, p. 3) is not followed by the Eighth Circuit and does not stand for the strict rule proffered by Plaintiffs.  Rather, the regulation only provides insight into the DOL's enforcement policy; it is not binding on this Court, nor does it shift Plaintiffs' burden of proof to Defendant. 29 C.F.R. § 785.2; *Blain,* 371 F.Supp. at 861.  Even if this Court were persuaded to rely solely on the regulations (which it cannot), all the regulations require is that such break periods be "long enough to enable him [the employee] to use the time effectively for his own purposes" and "[w]hether the time is long enough to enable him to use the time effectively for his own purpose depends upon all of the facts and circumstances of the case." 29 C.F.R. § 785.16.

The Eighth Circuit has joined the majority of the Federal Circuits in adopting the "predominantly-for-the-employer's-benefit standard" in determining whether a meal period is compensable under the FLSA. *See Henson v. Pulaski Co. Sheriff Dept.,* 6 F.3d 531, 534 (8th Cir. 1993).  Under the predominant benefit analysis, an employee's meal period is considered non-compensable unless Plaintiffs prove the employee's time is spent predominantly for the benefit of the employer. The employee bears the burden of proving the meal period, as a whole, predominantly benefits the employer. *See Hertz v. Woodbury County, Iowa,* 566 F.3d 775, 784 (8th Cir. 2009) ("[W]e believe that under the FLSA, the employee bears the burden to show that his or her mealtimes were compensable work.").

7

Other than the scheduled break times, Plaintiffs have offered no facts to permit this Court to find the 15-minute breaks were predominately for the benefit of Labels Direct and rule in Plaintiffs' favor as to the compensability of their meal/break periods. *Henson,* 6 F.3d at 534. Claiming that Labels Direct benefits generally from giving employees multiple break periods, such as having rested employees, is not enough to carry this burden. *Id.* Rather, numerous factors must be considered in evaluating the nature of the break periods **as a whole**, including the limitations and restrictions placed on employees, the extent to which those restrictions benefit the employer, the duties for which the employee is held responsible during the break period, the frequency in which the break periods are interrupted, and whether employees have enough time to eat during their breaks. *See Haviland v. Catholic Health Initiatives-Iowa, Corp.,* 729 F. Supp. 2d 1038, 1061 (S.D. Iowa 2010) (citing *Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 266 (5th Cir. 1998); *Myracle v. Gen. Elec. Co.,* No. 92-6716, 1994 WL 456769, at *5 (6th Cir. Aug. 23, 1994). Nowhere in their Complaint or Motion do Plaintiffs address these factors. Labels Direct, however, has directly addressed these factors and put forth facts and testimony sufficient to defeat summary judgment. Notably, discovery should verify these numerous facts which may eventually entitle Labels Direct to summary judgment. These facts, at a minimum, include:

- Facts and circumstances related to the establishment of the meal/break policy at issue, as well as the parties' expectations and preferences;
- Facts related to Plaintiffs' time clock practices;
- Facts related to the time Plaintiffs spent on breaks;
- Facts related to Plaintiffs' activities during their break periods;
- Facts related to Plaintiffs' whereabouts during their break periods;
- Facts related to the restrictions placed on Plaintiffs' break periods;
- Facts related to benefits derived by Plaintiffs from their breaks;

- Facts related to benefits derived by Labels Direct from Plaintiffs' breaks;

- Facts related to actual time spent "on the clock" and compensation received for such time; and

- Facts related to any payments retained by Plaintiffs in excess of actual compensation earned.

Such issues of fact preclude summary judgment, and Plaintiffs' arguments fail as a matter of law.

The Supreme Court held long ago that whether particular activities are considered "work" under the FLSA is a factual issue for the jury to determine. *Skidmore v. Swift*, 323 U.S. 134, 136-37 (1944). Courts since *Skidmore* have held that the predominant benefit test used to determine whether a meal period is compensable is an inherently factual inquiry most often **not appropriate for summary judgment**. *See Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993); *see also Bernard v. IBP, Inc.*, 154 F.3d 259, 265 (5th Cir. 1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence").

**1. Compensability of Plaintiffs' Break Periods.**

Plaintiffs cite 29 C.F.R. § 785.18 to support their contention that "Defendant's liability [is] obvious" and Plaintiffs are automatically entitled to compensation for their two 15-minute break periods. *See* Doc. #: 22, p. 3. But, again, the DOL regulatory interpretation is not controlling because it has properly been overridden by the Supreme Court and Eighth Circuit.

Ordinarily, regulations promulgated by an administrative agency charged with implementation of legislation are presumptively valid and entitled to judicial deference. *See Nat. R.R. Passenger Corp. v. Boston & Me. Corp.,* 503 U.S. 407 (1992). Regarding § 785.18 and § 785.19 and the other FLSA regulations, however, the DOL has specifically stated the "ultimate decisions on interpretations of the [FLSA] are made by the courts." 29 C.F.R. § 785.2 (citing

9

*Skidmore,* 323 U.S. at 138) (finding the DOL Administrator's interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). Indeed, § 785.2 provides that the regulations are merely designed to articulate "the positions [the DOL] will take in enforcement of the [FLSA]," and to "inform the public of such positions."

Courts considering the import of § 785.18 and § 785.19 have noted they are merely an "Interpretive Bulletin" that, while informative, are not binding. *See Henson* 6 F.3d at 534 (noting regulations such as § 785.19 "do not bind us"); *Blain,* 371 F.Supp. at 860 (finding the "30 minute meal period referred to in Section 785.19 is only a broad guide to the Administrator's enforcement policy. It is not an inflexible standard which binds either the Wage–Hour Administrator or the courts"); *see also Myracle v. Gen. Elec. Co.,* No. 889–2264, 1992 WL 699863, at *7 (W.D. Tenn. Dec. 1, 1992) (concluding that, while "helpful to the court in explaining the enforcement policy of the [DOL] with regard to meal periods," the regulations are not "binding or determinative" and do not "represent legal standards which the court is bound to follow"), *affirmed by Myracle v. Gen. Elec. Co.,* 1994 WL 456769, at *6 (6th Cir.1994).

In 1993, after considering the DOL's regulations, the Eighth Circuit rejected the standards found in the break period regulations, adopting in their stead the well-established "predominant benefit" standard. *Henson,* 6 F.3d at 533-534; *see also Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 808 (11th Cir.1992) ("The question of whether the employees are working…for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities," *i.e.*, "whether 'the time is spent predominantly for the employer's benefit or for the employee's"); *Bright v. Houston N.W. Med. Ctr. Survivor, Inc.,* 934 F.2d 671, 677 (5th Cir.1991) ( "[T]he 'critical issue' in cases of this kind [is] 'whether the employee can

use the time effectively for his or her own purposes.'"); *Hill v. United States,* 751 F.2d 810, 814 (6th Cir.1984) (concluding as a matter of law that postal workers were not spending meal times predominantly for the benefit of their employer where the employee "was not required to perform any activities that could be characterized as substantial duties"). The Eighth Circuit found the DOL regulation "lacks persuasive authority" because it is "inconsistent with the Supreme Court's longstanding interpretation of the [FLSA] and would mandate the application of a rigid rule in the face of the Supreme Court's direction that courts take a practical approach based on the unique facts of each case." *Id.* at 535. In particular, the Court was troubled by the inflexible nature of the DOL standards. *Id.* That same inflexible rule is proposed by Plaintiffs and, thus, must be rejected.

### 2. Given Record Evidence, The Break Periods Are Not Compensable.

Relying solely on the language in the FLSA regulations, Plaintiffs argue the 15 minute meal periods are compensable rest periods. Plaintiffs' argument is without merit. In *Blain,* 371 F. Supp. 857, the district court held an 18 minute meal period was not compensable. The complaint in *Blain* was brought by 62 present and former factory workers for General Electric. *Id.* at 858-59. The workers each worked 8 hours and 18 minutes, with an 18 minute unpaid meal break. Although the court found § 785.19 a helpful guide, the court held "[t]he essential consideration in any case is whether the employees are in fact completely relieved from work for the purpose of eating a regularly scheduled meal." *Id.* at 862. The court also found that even though the regulation mentions "special conditions," the **burden is on the plaintiffs** to prove the period is compensable. *Id.* In the end, the court held the 18 minute period qualified as an uncompensated break because it was long enough for employees to eat, it was chosen by employees in preference to a 30-minute meal period, and employees were not required to do any

11

work or be in any particular place during the break. *Id*.; *see also Hill*, 751 F.2d at 815 (summary judgment for employer on meal period issue upheld because it was found that the employees had enough time to eat). As a result, the court dismissed the complaint and granted judgment for the defendant.

The analysis in *Blain* was approved by a Sixth Circuit panel in *Myracle*, 1994 WL 456769, at *6 (6th Cir. 1994). The plaintiffs in *Myracle* argued their 20 minute meal periods were compensable because they were frequently interrupted and the employees continued to be responsible for the quantity and quality of their work during their meal periods. *Id.* at *4. The mechanics could leave the factory during their meal period and could choose the time to take them. *Id*. at *3. However, because they continued to be responsible for the quantity and quality of their machine's output during breaks, the mechanics were sometimes paged if their machines were shut-off or if there was a power outage. *Id*. Occasionally they were disciplined for production deficiencies that occurred during their unpaid 20 minute break. *Id*. But the court found it significant that the mechanics could "eat, rest, smoke, make telephone calls, or go to their vehicles during their meal periods; and that the mechanics are permitted to leave the plant if they wish to do so." *Id.* at *5.

The Sixth Circuit agreed. While it was true the employer had the benefit of continuous operation during the meal period, the Court held the employee must be engaged in ***substantial*** duties under the predominant benefit test. *Id.* The Court also rejected the plaintiffs' argument that the lower court should have given greater weight to the regulation stating the meal period should be 30 minutes. *Id*. at *6-7. The Court held the FLSA regulations are not controlling. *Id*. Other considerations were more important to the Court's analysis, like the employees' ability to

12

eat or rest and the frequency of interruptions to the meal periods. *Id*. at 5. Accordingly, the Court affirmed the district court's holding that the breaks were not compensable.

Here, the two 15-minute breaks were more beneficial to Plaintiffs than the breaks in *Blain* and *Myracle*. Like *Blain*, the three break periods were long enough for Plaintiffs to eat, they were chosen by Plaintiffs in preference to a single, 1-hour meal period, and Plaintiffs were not required to do any work or be in any particular place during the breaks. Not only were the two 15-minute breaks long enough for Plaintiffs and the other employees to eat, but Labels Direct provided them free food during all three breaks. And unlike the employees in *Myracle*, Plaintiffs were not required to do any work, be "on call" or be at any particular place during their breaks, and their breaks were rarely, if ever, interrupted.

Plaintiffs have offered no evidence contesting these issues of fact. Accordingly, the Court must deny Plaintiffs' motion for summary judgment. *See Jordan v. IBP, Inc.*, 2008 WL 943592 at *19 (M.D. Tenn. 2008) (denying plaintiffs' motion for summary judgment because there were genuine issues of fact about whether the activities performed during the meal period predominantly benefited the employer, about how the meal period is measured, and whether they are required to engage in production work during the meal period); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 84-85 (W.D.N.Y. 2005) (denying plaintiff's motion for summary judgment on the break issue and holding there were issues of fact as to the frequency and typical duration of any interruptions); *Brinkman v. Dep't of Corrs. of the State of Kan.,* 804 F. Supp. 163, 173 (D. Kan. 1992) (denying summary judgment to the plaintiff and the defendant on the break issue because material facts remained and noting the frequency of emergency calls was a factor for the jury to consider); A*bel v. Dep't of Corrs of State of Kan.*, 1995 WL 550045, at *3 (D. Kan. July 26, 1995) (denying summary judgment because of factual issues whether meal period was

13

predominately for benefit of employer and noting that issues of fact remained as to the frequency of missed and interrupted meal breaks).

**D.  Alternatively, The Court Should Deny Summary Judgment On The Merits.**

While Labels Direct believes discovery is necessary to provide a complete response, Labels Direct has presented information within its possession to the Court in response to Plaintiffs' Motion for Partial Summary Judgment. Should the Court decide to consider Plaintiffs' Motion on the merits, the information provided by Labels Direct is more than sufficient to bar summary judgment.

Despite Plaintiffs' failure to address the appropriate standard for determining the compensability of their break periods, Labels Direct's evidence has demonstrated Plaintiffs were relieved from duty during their breaks, and the breaks provided sufficient time for Plaintiffs to eat and were for the primary, if not sole, benefit of the employees. For all these reasons, Plaintiffs cannot prevail on their overtime claims. Thus, if the Court reaches the merits of the Motion for Partial Summary Judgment, it should be denied.

### III.     CONCLUSION

An overwhelming body of case law in the Eighth Circuit disfavors premature motions for summary judgment. The present Motion is a textbook example of a premature dispositive motion, coming one week after the removal of this case, based on misrepresented and incomplete facts before an answer to Plaintiffs' Third or Fourth Amended Complaints had been filed, while a Motion for Class Certification is pending, and prior to any depositions and sufficient discovery being conducted. The Motion for Partial Summary Judgment should be denied outright as premature.  However, if the Court decides to consider Plaintiffs' Motion on the merits, it should deny the Motion because the evidence in the record establishes the existence of a genuine issue

of material fact surrounding Plaintiffs' breaks.  Alternatively, the Court should continue any consideration of Plaintiffs' Motion until discovery has been completed and all of Plaintiffs' claims can be addressed at the same time.

Wherefore, Labels Direct, Inc. respectfully requests the Court deny Plaintiffs' Motion for Partial Summary Judgment. In the alternative, Labels Direct request that the Court postpone consideration of the Motion until adequate discovery has been conducted.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Nathan J. Harris*
Burton D. Garland, Jr., #46720
Nathan J. Harris, #63865
7700 Bonhomme Avenue
St. Louis, MO  63105
314.802.3935
314.802.3936 *(facsimile)*
burton.garland@ogletreedeakins.com
nathan.harris@ogletreedeakins.com

*Attorneys for Defendant Labels Direct, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 22nd day of August, 2014, a copy of the foregoing was filed with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Maria V. Perron
Martin L. Perron
The Perron Law Firm, P.C.
275 North Lindbergh Blvd.
St. Louis, Missouri 63141

*Attorneys for Plaintiff*

                                         */s/ Nathan J. Harris*
                                         **Attorney for Defendant**

18598920.3