UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE BENTON, *et al.*, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:14CV01293 ERW |
| ) | |
| LABELS DIRECT, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs Johnnie Benton's and Sean Marre's ("Plaintiffs") "Motion for Class Certification" [ECF No. 16].

**I.  BACKGROUND**

On March 3, 2014, Plaintiffs, individually, and as representatives of a class of similarly situated persons, filed a First Amended Petition in the Circuit Court of the County of St. Louis, alleging Defendant Labels Direct, Inc., ("Labels Direct") violated the Missouri Minimum Wage Law ("MMWL"), Missouri Revised Statutes §§ 290.500, *et seq*. [ECF No. 11].  On July 22, 2014, Defendant Labels Direct, Inc. ("Labels Direct') filed a Notice of Removal, on grounds of federal question jurisdiction, because Plaintiffs' unruled state "Motion for Class Certification" [ECF No. 16] alleged they and the purported class had been harmed by Labels Direct's violation of 29 C.F.R. § 785.18 [ECF Nos. 1, 7, 16, 16-1].  Thus, Labels Direct asserted this Court has original jurisdiction over this matter because it arises under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

1

After the Court directed Labels Direct to respond to Plaintiffs' Motion for Class Certification, Labels Direct filed its Response [ECF Nos. 18, 30, 30-1]. On July 28, this Court entered a Docket Text Order that, among other things, granted Plaintiffs leave to add two more individuals, Ryan Piel and Adam English, as plaintiffs in this matter [ECF No. 17]. The Court granted Plaintiffs leave to file their Fourth Amended Complaint, and to add Labels Direct's President Christopher Budde ("Budde"), and Vice-President Kimberly Chaney ("Chaney"), as defendants on August 8, 2014 [ECF Nos. 28, 31, 33]. Plaintiffs filed "Plaintiffs' Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification" on August 13, 2014 [ECF No. 35].

In addition to its MMWL claims, Plaintiffs' Fourth Amended Complaint ("FAC") specifically asserts claims under the FLSA, alleging two categories of overtime violations: 1) failure to pay for 15-minute rest periods taken twice each day; and 2) failure to pay wages for time worked after the scheduled end of a shift, and for time spent attending meetings [ECF No. 33]. Plaintiffs' FAC requests compensatory and liquidated damages, interest for unpaid overtime wages, attorneys' fees and costs, and injunctive relief. Labels Direct, Chaney, and Budde filed their separate Answers to Plaintiffs' FAC on August 22, 2014 [ECF Nos. 38, 39, 40].

**II.  DISCUSSION**

In their Motion for Class Certification, Plaintiffs ask the Court to certify this matter as a class action on behalf of each member of the class, designate one or more plaintiffs as Class Representative, appoint their counsel as Class Counsel, and for such other orders as may be just and proper [ECF No. 16]. Plaintiffs state the only claim at issue, for purposes of this class certification motion, is Plaintiffs' claim they worked nine-hour shifts at the Labels Direct factory,

but were paid for only eight of those hours [ECF No. 16-1 at 1]. Plaintiffs define the purposed class as "all persons of the same grade and class as Plaintiffs Johnnie Benton, Sean Marre, Ryan Piel and/or Adam English who, during the years prior to the filing of this action, through the day of certification, worked more than forty hours a week for Defendant Labels Direct, Inc. but did not receive overtime pay at a rate equal to or in excess of one and one-half times the regular rate; or such other class or subclass as may be indicated" [ECF Nos. 33 at 15, 16-1 at 9].

Plaintiffs have submitted no affidavits, declarations, or exhibits in support of their Complaint or Motion for Class Certification. According to Plaintiffs' allegations, prior to March 2009, non-exempt hourly production workers, such as themselves, took a 1-hour lunch break in the middle of a nine-hour workday. In March 2009, a number of employees, including Plaintiff Sean Marre, requested a change in this practice, so that they could have a 15-minute break in the morning before lunch, and another 15-minute break in the afternoon after lunch, with a 30-minute lunch break. This request was granted by Labels Direct, and from January 2010 through the date of the filing of this suit, production workers like Plaintiffs, were allowed an uncompensated 30-minute lunch break, and two 15-minute breaks, also uncompensated. Plaintiffs and other similarly situated manufacturing workers were required to clock in at the beginning of each 9-hour shift, clock out at the beginning of each break and each lunch break, clock in at the end of each break, and clock out at the conclusion of their 9-hour shift. Shortly after this action was filed in January 2014, Labels Direct eliminated the 15-minute breaks, and returned to the former policy of one 1-hour lunch break. Plaintiffs state their Motion to Certify raises only a claim relating to the two 15-minute morning and afternoon breaks.

In "Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class

Certification," Labels Direct asserts Plaintiffs have failed to meet their burdens for class certification under both the federal and the Missouri rules of civil procedure, as the defined class cannot satisfy the rules' numerosity, adequacy of representation, predominance and superiority requirements [ECF No. 30-1]. Labels Direct further asserts Plaintiffs seek class certification for an action alleging FLSA and MMWL wage and hour violations for time spent doing no work, and it contends "Missouri courts have yet to consider whether break periods are compensable under Missouri law."

In support of its Memorandum in Opposition, Labels Direct has submitted "Declaration of Kimberly Chaney" [ECF No. 30-1 at 23-27]. According to Chaney, Labels Direct currently employs about 13 individuals at its facility in Chesterfield, Missouri. She states that since January 2012, Labels Direct has employed a total of 18 warehouse and manufacturing employees at its Chesterfield facility, and of these 18 employees, only 8 are currently employed by Labels Direct. Chaney further states Labels Direct does not require, expect, or allow any employees to perform work outside their scheduled shifts or during their breaks, and when hourly employees take scheduled breaks or leave Labels Direct's premises for personal reasons, such as medical appointments, they must "clock in and out" using an Ingersoll Rand time clock. Chaney declares declares that prior to 2010, warehouse and manufacturing employees were permitted one 1-hour break per day, but, after several employees expressed a preference for multiple meal breaks, Labels Direct instituted a policy that provide warehouse and manufacturing employees one 15-15-minute break in the morning, a 30-minute break in the middle of their shift, and one 15-15-minute break in the afternoon. Generally, these employees were allowed to take their breaks whenever they desired; their time and attention during the breaks was devoted to non-work-

4

non-work-related activities for their benefit and not Labels Direct's; they could leave the premises during breaks; and they were not required or allowed to perform and duties while on break.

According to Chaney, breaks were rarely interrupted; but if an employee's break was interrupted, or otherwise cut short, the employee clocked back in prior to performing any work, and was properly compensated to any time worked. She states these employees generally were paid for eight hours of work per day, even if they took longer breaks than permitted, clocked in late for work, or clocked out before the end of their shift. Chaney declares most warehouse and manufacturing employees clocked less than 40 hours per week, but, if an employee worked five days in any given week and clocked approximately 40 hours, Labels Direct paid them for their scheduled 40 hours of work. She further declares no employee ever complained to her about the three breaks being off-the-clock, but when Labels Direct amended the break time policy in February 2014 to provide for one 45-minute break per day, many employees expressed their dissatisfaction, because they preferred the three breaks per day.

In its Memorandum, Labels Direct states that, since January 2012, the break policy at issue applied only to 18 hourly, non-exempt warehouse and manufacturing employees, and Labels Direct claims Plaintiffs seek to represent current and former employees outside this classification, who were subject to different pay and break-time policies, and asserts Plaintiffs are not adequate representatives of employees outside the warehouse and manufacturing department. Labels Direct contends "the highly individualized inquiries that will be required in order to establish liability, defenses, and any damages make Plaintiffs' request for class-wide relief inappropriate" [ECF No. 30-1 at 2]. According to Labels Direct, employees could take their

5

break when they wanted, left their work stations over their breaks, and were responsible for clocking the time spent on scheduled breaks. However, although Labels Direct expected employees to take all of their breaks, if an employee did not clock out if they missed a break, or worked through a break, Labels Direct would pay the employee for any break missed, in whole or in part.

In their Reply, Plaintiffs propose two avenues by which the Court could certify this matter as a collective action:

> Plaintiffs submit that it would be reasonable and fair to all parties if the current motion now pending before the Court be considered to be filed on behalf of all four named Plaintiffs and against all three named Defendants. Plaintiffs further submit it would be reasonable to consider the pending motion as one for a "step 1" or "notice stage" certification as a collective action under 29 U.S.C. § 216(b).
>
> Another reasonable course of action, however, would be to continue to proceed with the pending motion as if it sought to certify a class such as that requested in Count VI of the Fourth Amended Complaint, which applies the Rule 23 class action standards to the alleged violation of the MMWL. This is essentially what Plaintiffs Benton and Marre were requesting when they filed the Motion now before the Court [Doc. 16]. Any ruling on that motion would not prejudice or prevent another motion for collective action based on a violation of the FLSA.

[ECF No. 35 at 2].

### A. Certifying a MMWL Collective Action under Rule 23

Count VI of Plaintiffs' Complaint asserts a class action claim for violation of the MMWL, alleging that Plaintiffs, and other similarly situated, were required to take two unpaid fifteen-minute breaks each work day, and that they worked more than forty hours a week, but did not receive overtime pay at a rate equal to, or in excess of, one and one-half times the regular rate of pay for those fifteen-minute breaks [ECF No. 33 at 13]. Plaintiffs further allege in Count VI,

6

upon information and belief, that the number of potential class members may range from eighteen to twenty-one.

In their Motion to Certify, Plaintiffs quote 29 C.F.R. § 785.18, and claim Labels Direct's practice violates "the rule that has been in effect for more than 60 years: breaks of 20 minutes or less must be compensated" [ECF No. 16-1 at 3]. 29 C.F.R. § 785.18 provides:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods many not be offset against other working time such as compensable waiting time or on-call time.

Plaintiffs assert Direct Labels' practice has thus violated Missouri's MMWL, because Missouri has specifically incorporated this federal regulation into the overtime provision of its wage and hour law, Section 290.505 (prohibiting employment for a workweek exceeding 40 hours, unless employee is compensated at not less than one and one-half times regular rate of pay for hours over 40, & providing for interpretation in accordance with the FLSA, except as otherwise provided in the MMWL).

District courts may certify classes under Federal Rule of Civil Procedure 23 when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 establishes certain prerequisites that must be met before one or more members of a class may sue as representative parties on behalf of all members:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs bear the burden to show the class should be certified and that the rule's requirements are satisfied. *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

Labels Direct first contends the Court should not certify this matter as a class action, "because there simply are not enough potential plaintiffs" [ECF No. 30-1 at 1]. According to Labels Direct, "[e]ighteen putative class members, four of which have already joined this lawsuit, are not enough to comprise a viable class" [ECF No. 30-1 at 1]. Labels Direct additionally argues Plaintiffs fail to satisfy the other class certification requirements of Federal Rule of Civil Procedure 23, i.e., adequacy of representation, predominance and superiority. *See* Fed. R. Civ. P. 23(a)(4), (b)(3).

In their Reply, Plaintiffs concede it would be within the Court's discretion to deny their current motion for class certification solely on this basis, as the number of members for the putative class is relatively small. Plaintiffs argue, however, it would be a proper exercise of discretion for the Court to grant their motion, and conditionally certify their defined class. They further contend the incremental addition of plaintiffs to this matter illustrates the unlikelihood current employees would join the action.

Rule 23(a) requires a class to be "so numerous that joinder of all members is impracticable." *See Tate v. Weyerhaeuser*, 723 F.2d 598, 609 (8th Cir. 1983). Although no

arbitrary rules regarding the requisite size of classes have been established, *see Boyd v. Ozark Air Lines, Inc.*, 568 F.2d 50, 54 (8th Cir. 1977), the Court finds Plaintiffs has failed to establish numerosity. At best, the potential class of eighteen employees is not so numerous as to require class certification, and four of the potential class members have already joined the action as plaintiffs. *See Tate,* 723 F.2d at 609 (putative class of 7 former employees not so numerous as to to require class certification); *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304, 1308 (8th Cir. 1978) (classes of 13 and 11 insufficient for certification). The fourteen or so class members remaining are current and former Labels Direct employees who presently or recently worked in the St. Louis area. Weighing other factors relevant to the practicability of joining all the putative putative class members, the Court finds individual actions are feasible. Considering the small number of potential class members, the nature of Plaintiffs' action, the compensatory and injunctive relief sought, and the lack of geographic diversity, Plaintiffs have not proven that based on size, joinder of all members is impracticable.

Labels Direct further argues Plaintiffs cannot satisfy Rule 23(a)'s requirement that the representative parties to be capable of fairly and adequately protecting the interests of the class. Fed. R. Civ. P. 23(a)(4). However, although it agrees potential conflicts with absent putative class members undermine the suitability of the class representatives to protect their interests,[1] the Court need not discuss this contention, because, in addition to meeting Rule 23(a)'s prerequisites, Plaintiffs must satisfy one of the requirements imposed by Rule 23(b) for class certification. Here, Plaintiffs seek certification under Rule 23(b)(3), and the Court concludes that

---

1 The Court notes the fact that one of the proposed class representatives is the former employee who petitioned Labels Direct to initiate the two 15-minute breaks practice, in and of itself, raises concerns of conflicting interests and defenses in this matter.

that the numerosity requirement of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3) bar class certification as a collective action under the rule. Rule 23(b)(3) imposes a more demanding standard for certification than the commonality requirement of Rule 23(a), and thus courts must exercise caution when determining if its requirements are satisfied, especially if significant disparities exist among the class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

A predominance inquiry under Rule 23(b)(3) involves determining whether questions of law or fact common to the proposed class members predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). If members of a proposed class will need to present evidence that varies among members, the question is an individual one. *Id*. On the other hand, if the same evidence will suffice for each member to make a prima facie showing on a given question, the question becomes a common one. *Id*. Plaintiffs claim:

> Questions of law and fact would be the same for all members of the class with respect to the obligation to pay overtime wages at a rate equal to one and one-half the regular rate; and the amount of overtime hours worked and the pay received for each class member during any pay period can be determined by an examination of pay check stubs and similar payroll records and by adding 15 minutes for each mandatory break.

[ECF No. 33 at 14]. Plaintiffs' broad assertion does not take into consideration factors such as Labels Direct's practice of paying for breaks missed in whole, or in part; or the possibility that some plaintiffs' claims may have been mitigated by overpayments made to them during their employment. The Court finds a class adjudication would involve separate mini-trials to

10

determine a variety of factual and legal questions particular to each member. Among other things, Plaintiffs must show whether each member: 1) worked more than 40 total hours weekly during the relevant period; and 2) in fact, worked time that was not recorded in Labels Direct's timekeeping system, and for which the member was not paid. This is not a situation where an employee has implemented automatic pay deductions for break periods. Instead, the putative class members were personally responsible for clocking their time at the start and end of each break, did not always take their breaks as scheduled, and sometimes may have missed a break or had their break interrupted; thus, not every member would be entitled to be compensated at the overtime rate for two 15-minute breaks for each 9-hour shift worked. Plaintiffs' off-the-clock claims would entail individualized inquiries about the actual time each member took for each break on a daily basis, what the member did during the breaks, what restrictions were placed upon them in exercising their break options, and the benefit derived by the employees or employer as a result. Plaintiffs' MMWL class claims depend on a variety of work and timekeeping practices, and individualized circumstances in which they and other Labels Direct employees allegedly worked unpaid overtime. Accordingly, the Court finds that the issue of whether there are violations of the MMWL cannot be decided on evidence relevant to the class as a whole, and Plaintiffs cannot satisfy Rule 23(b)(3) with respect to these claims.

Finally, under subsection (b)(3) of the class action rule, courts must also find the class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant factors to be considered in this analysis include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P 23(b)(3)(A)–(D). These factors do not weigh in favor of class certification. As noted, potential conflicts with absent putative class members undermine the suitability of the class representatives to protect their interests. A class action would not be the superior method for resolving the claims of the proposed class members for unpaid wages. As discussed with respect to predominance, resolving Plaintiffs' substantive claims will involve particular inquiry into each alleged instance of unpaid time. Moreover, the other off-the-clock claims asserted in Plaintiffs' Complaint, but not subject to the Motion for Class Certification, will involve many of the same factual and legal questions and require personal testimony and individualized reconstruction of each affected employee's work and pay history, and will require separate adjudication, individual pursuit, and corresponding expense. The Court finds Plaintiffs have not shown that a class action is a superior method for adjudicating their personal wage claims for overtime pay. The Court will deny Plaintiffs' request to certify a MMWL collective action under Rule 23.

### B. Certifying a FLSA Collective Action under 29 U.S.C. § 216(b)

The FLSA prohibits the employment of any individual "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employees suing for unpaid overtime have the burden of proving they performed work for which they were not properly compensated. *Bouaphakeo v.*

12

*Tyson Foods, Inc.*, No. 12-3753, 2014 WL 4197378 at *1 (8th Cir. Aug. 25, 2014). The FLSA authorizes similarly situated employees to bring collective actions against their employer if they can satisfy certain criteria. 29 U.S.C. ' 216(b) (held unconstitutional, and preempted on other grounds by *Alden v. Maine*, 119 S.Ct. 2240 (1999) ((Congress could not subject state to suit in state court without its consent); 2013 CONG US HR US S 2486, 113th Congress, 2nd Session, (Jun 18, 2014) Introduced in Senate, proposed action: amended).

AAn action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.@ 29 U.S.C. § 216(b). A collective action under the FLSA differs from a class action brought pursuant to Federal Rule of Civil Procedure 23, because an FLSA collective action is pursued on an opt-in basis, requiring employees to provide their consent in writing to join the action. *Id.; Lindsay v. Wells Fargo Advisors, LLC*, No. 12-577, 2013 WL 943736 at *1 (E.D. Mo., March 11, 2013).

Courts within this district conduct a two-step analysis when considering whether employees are Asimilarly situated.@ *Lindsay*, 2013 WL 943736 at *1. First, usually at an early stage of the litigation, the plaintiff moves for class certification for notice purposes. *Id.* This early filing requires a lenient evaluation standard, and typically results in conditional certification of a representative class. *Id*. To meet their burden at this first stage, plaintiffs need only make a a modest factual showing sufficient to demonstrate that they and other potential plaintiffs were victims of a common policy or plan that violated the law. *Id.* at *2. The showing can be made by means of detailed allegations supported by affidavits. *Id.* The potential class members then are given notice of the action and the opportunity to opt-in. *Id.* at *1.

The second step of the certification process occurs when the defendant moves to decertify the class. *Id.* at *2. Courts typically conduct the second step of their analysis after discovery is completed, because the greater information available then enables them to make a more informed decision. *Id.* At this second stage, a court considers three factors: 1) the employment and factual settings of the plaintiffs; 2) the various defenses available to the defendants; and 3) fairness, procedure, and manageability. If the plaintiffs= claims are not similarly situated, Athe Court decertifies that class and the opt-in plaintiffs are dismissed without prejudice.@ *Id.*

The plaintiffs' burden at the first step of the FLSA certification process is not onerous. *Id*. Nevertheless, even given the lenient notice standard, the Court finds Plaintiffs have not established conditional certification is proper. Although plaintiffs need not show that the would-be members of the class are actually similarly situated or that they are identical, they must present some evidence to demonstrate the class members are similar in important respects, and have been subject to similar policies or circumstances. *Id*. Plaintiffs may meet this burden by presenting detailed allegations supported by affidavits. *Id*. (quotations and citation omitted). Here, Plaintiffs have submitted no affidavits, declarations, or exhibits to support their claims "that the proposed class members were victims of a single decision, policy, or plan." *Id*. (quoting *Ford v. Townsends of Ark., Inc.*, No. 08-509, 2010 WL 1433455 at *3 (E.D. Ark., Apr. 9, 2010)). Accordingly, the Court finds that Plaintiffs' allegations alone do not demonstrate they and their fellow employees were together the victims of a single decision, policy, or plan, and therefore do not support conditional certification. Consequently, the Court will deny their request for conditional certification as a FLSA collective action under 29 U.S.C. § 216(b).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Johnnie Benton's and Sean Marre's ("Plaintiffs") "Motion for Class Certification" [ECF No. 16] is **DENIED**.

So Ordered this 17th day of September, 2014.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**